UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
DANIEL MILLER, STANLEY C. GOLON,
JEFFREY MEDINA, JEROME MAY,
DAMON WILSON, and all others who are
similarly situated,

                          Plaintiffs,

              -against-

COUNTY OF NASSAU;
THOMAS SUOZZI, COUNTY EXECUTIVE;
KATHLEEN M. RICE, DISTRICT
ATTORNEY; AND HON, ANTHONY
MARANO, CHIEF ADMINISTRATIVE
JUDGE,

                          Defendants.
-------------------------------------------------------X

**MEMORANDUM OF
DECISION AND ORDER**
06-cv-4347 (ADS)(ARL)

**A P P E A R A N C E S** :

**DANIEL MILLER**
Plaintiff Pro Se
Nassau County Correctional Facility
East Meadow, NY 11554

**STANLEY C. GOLON**
Plaintiff Pro Se
Nassau County Correctional Facility
East Meadow, NY 11554

**JEFFREY MEDINA**
Plaintiff Pro Se
Nassau County Correctional Facility
East Meadow, NY 11554

1

**JEROME MAY**
Plaintiff Pro Se
Nassau County Correctional Facility
East Meadow, NY 11554

**DAMON WILSON**
Plaintiff Pro Se
Nassau County Correctional Facility
East Meadow, NY 11554

**OFFICE OF THE NASSAU COUNTY ATTORNEY**
Attorneys for the Defendants County of Nassau, Thomas Suozzi and Kathleen M. Rice
One West Street
Mineola, NY 11501
　　　By:　Sondra M. Mendelson, Deputy County Attorney

**OFFICE OF COURT ADMINISTRATION**
Attorneys for the Defendant the Honorable Anthony Marano
25 Beaver Street
New York, NY 10004
　　　By:　Michael Colodner, Esq., Of Counsel

**SPATT, District Judge**.

　　　Daniel Miller, Stanley C. Golon, Jeffrey Medina, Jerome May and Damon Wilson ("the "Plaintiffs"), *pro se*, bring this action against the County of Nassau (the "County"), County Executive Thomas Suozzi ("Suozzi"), District Attorney Kathleen M. Rice ("Rice"), and Nassau County Administrative Judge Anthony Marano ("Judge Marano"). The Plaintiffs allege that the District Attorney's unconstitutional plea bargaining policy and the Defendants' acceptance of that policy violates 42 U.S.C.

Section 1983. The Plaintiffs seek a declaratory judgment and injunctive relief enjoining and prohibiting enforcement of the plea bargaining policy.

Presently before the Court is a motion by the Defendants, the County, Suozzi and Rice, to dismiss the complaint pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6). Also pending before the Court is the Plaintiffs' motion for class certification.

## I. BACKGROUND

The Court is required to read the Plaintiffs' pro se complaint liberally. See Hughes v. Rowe, 449 U.S. 5, 9, 101 S. Ct. 173, 176 (1980); Haines v. Kerner, 404 U.S. 519, 520–21, 92 S. Ct. 594, 595 (1972). Moreover, at this stage of the proceedings, the Court assumes the truth of the allegations in the complaint. See H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 249-50, 109 S. Ct. 2893 (1989); Koppel v. 4987 Corp., 167 F.3d 125, 128 (2d Cir. 1999). For the following background facts, the Court relies on the information contained in the Plaintiffs' complaint and the attachments submitted with the complaint.

The Plaintiffs are pretrial detainees and sentenced inmates currently incarcerated. They allege that the District Attorney's plea bargaining policy violates the constitutional guarantees of Due Process and Equal Protection, as well as the Separation of Powers doctrine and the New York State Constitution. Specifically, the Plaintiffs claim that the District Attorney's Office "will not engage in any plea

3

bargaining unless it is [the District Attorney's Office], rather than the presiding judge who selects the exact sentence of incarceration."

The Plaintiffs claim that they represent four separate subclasses of persons who have been affected by this policy: "1) defendants who were given plea agreements by the former District Attorney which were not in violation of the Constitution and Laws of the United States and State of New York, and whose plea agreements were subsequently rescinded upon inauguration of the new District Attorney; 2) defendants who are currently pretrial detainees incarcerated pending trial or other disposition of criminal charges in the County of Nassau; 3) defendants who have been sentenced after having been convicted by a plea of guilty to an offense alleged to have been committed in the County of Nassau, and 4) defendants at liberty on bail or otherwise who are facing trial or other disposition of criminal charges in the County of Nassau."

The Plaintiffs claim that the current plea bargaining policy was implemented by Rice when she became the District Attorney. The Plaintiffs set forth claims against Rice in her official capacity. The Plaintiffs further allege that the presiding judge should decide the sentence imposed pursuant to a guilty plea and that the District Attorney's policy "abrogates the statutory role of the judicial officer at sentencing converting the powers and functions of a judge to no more than a mere Master of Ceremonies." The Plaintiffs also claim that Suozzi, in his official capacity, failed to

take steps to protect the public from Rice's policy. The Plaintiffs further claim that Judge Marano, in his official capacity, failed to direct judges to refuse to participate in the plea bargaining policy.

The Plaintiffs seek a declaratory judgment that the plea bargaining policy is unconstitutional. The Plaintiffs further request an injunction prohibiting and enjoining the District Attorney's office from utilizing her plea bargaining policy and from enforcing the policy as to the Plaintiffs. The Plaintiffs also seek class certification.

The Defendants, the County, Suozzi and Rice move to dismiss the complaint arguing that the County is not liable for Rice's actions because the Plaintiffs fail to claim that the allegedly unconstitutional acts were a result of a County policy, practice or custom. The Defendants further argue that the claims against Suozzi must fail because Nassau County is named as a Defendant. The Defendants also argue that the Plaintiffs fail to state a claim against Rice because there is no constitutional right to a plea bargain and mere disagreement with Rice's policies is not sufficient for judicial intervention. The Defendants further allege that the Plaintiffs' claims are barred by the Younger and the Rooker-Feldman abstention doctrines. Finally, the Defendants claim that the complaint lacks merit.

The Plaintiffs have not opposed the motion to dismiss.

5

## II. DISCUSSION

### A.    Standard of Review for Motion to Dismiss

The Court is mindful that the Plaintiffs are proceeding pro se and that their submissions should be held "'to less stringent standards than formal pleadings drafted by lawyers . . . .'" Hughes, 449 U.S. at 9 (quoting Haines, 404 U.S. at 30).  District courts should "read the pleadings of a pro se plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).  Nevertheless, the Court is also aware that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law . . . ." Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (internal quotations and citation omitted).

### 1.    Rule 12(b)(6)

In deciding a motion to dismiss under Rule 12(b)(6), a district court must "accept all of the plaintiff's factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." Desiderio v. National Ass'n of Sec. Dealers, Inc., 191 F.3d 198, 202 (2d Cir. 1999).  A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Dangler v. New York City Off Track Betting Corp., 193 F.3d 130, 138 (2d Cir. 1999) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)).

"The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." King v. Simpson, 189 F.3d 248, 287 (2d Cir. 1999) (quoting Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1999)).

**B.    Absolute Judicial Immunity**

Although Judge Marano has not moved to dismiss the Plaintiffs' complaint, this Court may, sua sponte, dismiss a complaint for lack of subject matter jurisdiction, based on a finding of judicial immunity. Daniels v. Appellate Div. of State Supreme Court, No. 97 Civ 5113, 1997 U.S. Dist. LEXIS 12832, at *2 (S.D.N.Y. Aug. 27, 1997) ("Because this Court lacks subject matter jurisdiction under the Rooker-Feldman doctrine, and/or because plaintiff's complaint is barred by the doctrine of absolute judicial immunity, plaintiff's complaint is hereby dismissed sua sponte"); Leslie v. Mortgage Electronic Registration Sys., Inc., No. 05 CV 1725, 2006 U.S. Dist. LEXIS 50378 (D. Conn. July 12, 2006) (Court granted motion to dismiss the complaint for lack of subject matter jurisdiction based on judicial immunity).

It is well settled that judges are absolutely immune from suit for any actions taken within the scope of their judicial responsibilities or within his or her jurisdiction. See Mireles v. Waco, 502 U.S. 9, 9-12, 116 L. Ed. 2d 9, 112 S. Ct. 286 (1991); Maestri v. Jutkofsky, 860 F.2d 50, 52-53 (2d Cir. 1988). The rule of absolute judicial immunity is necessary because "principled and fearless decision-making" will be

7

compromised if a judge "fears that unsatisfied litigants may hound him with litigation charging malice or corruption." Vasile v. Dean Witter Reynolds Inc., 20 F. Supp. 2d 465, 489 (E.D.N.Y. 1998) (internal quotations and citation omitted).

The Supreme Court has emphasized that the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge. Stump v. Sparkman, 435 U.S. 349, 356-57, 55 L. Ed. 2d 331, 98 S. Ct. 1099 (1978) (citation omitted). Absolute immunity exists "however erroneous the act may have been, however injurious in its consequences it may have proved to the plaintiff." Bradley v. Fisher, 80 U.S. 335, 347, 20 L. Ed. 646 (1871). "The cloak of immunity is not pierced by allegations of bad faith or malice." Tucker v. Outwater, 118 F.3d 930, 932 (2d Cir. 1997). Indeed, the doctrine of judicial immunity is so expansive that it is overcome only when (1) the action is nonjudicial, i.e., not taken in the judge's judicial capacity; or (2) the action, although judicial in nature, is performed in the complete absence of any jurisdiction. Mireles, 502 U.S. at 11-12.

"The Supreme Court has applied a 'functional' approach in deciding whether an act is judicial for purposes of immunity." Vasile, 20 F. Supp. at 489 (citing Cleavinger v. Saxner, 474 U.S. 193, 200, 106 S. Ct. 496, 501, 88 L. Ed. 2d 507 (1985)). To determine whether a judge is entitled to absolute immunity the Court must examine the nature of the responsibilities at issue. Id. The Court should

consider the nature of the action taken by the Judge, as well as, the expectations of the parties, and the adversary nature of the process. Id.

Here, the Plaintiff's claims against Judge Marano stem from his actions while acting as Administrative Judge. Specifically, the Plaintiffs claim that Judge Marano should not have accepted plea agreements negotiated by the District Attorney's Office. Nothing suggests that Judge Marano was without jurisdiction or that he acted outside his judicial capacity. See Vasile, 20 F. Supp. 2d at 489. A decision by a judge regarding the acceptance of plea bargains is clearly a judicial action, and clearly within the scope of the judge's jurisdiction.

In addition, although the Plaintiffs assert claims against Judge Marano solely in his official capacity, judicial immunity protects judges acting in that role. Puletti v.Patel, No. 05 cv 2293, 2006 U.S. Dist. LEXIS 51597, at *26 (E.D.N.Y. July 14, 2006) (judicial immunity protects judges acting in their individual and official capacities); DiPasquale v. Milin, 303 F. Supp. 2d 430, 431 (S.D.N.Y. 2004) ("By its very nature, the doctrine of judicial immunity . . . operates to shield judges acting in their official capacity").

Moreover, absolute immunity bars the Plaintiffs' § 1983 claim for injunctive relief. Montero v. Travis, 171 F.3d 757, 761 (2d Cir. 1999); Collins v. Lippman, No. 04-cv-3215, 2005 U.S. Dist. LEXIS 1116, at *7-8 (E.D.N.Y. June 8, 2005); Holbert, 2006 U.S. Dist. LEXIS 1869, at *21; Brooks v. N.Y. State Supreme Court, No.

9

02-CV-4183, 2002 U.S. Dist. LEXIS 19914, at *7 (S.D.N.Y. Aug. 16, 2002) (Section 309(c) of the Federal Courts Improvement Act of 1996 "bars injunctive relief in any section 1983 action against a judicial officer for an act or omission taken in such officer's judicial capacity").

   As such, Judge Marano is entitled to absolute judicial immunity with regard to the Plaintiffs' claims. Accordingly, the complaint against Judge Marano is dismissed.

**C.   As To The Claims Against the County**

   To state a claim under Section 1983, "a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States." Dwares v. City of New York, 985 F.2d 94, 98 (2d Cir. 1993). However, under Section 1983, a municipality cannot be held liable solely on a theory of respondeat superior. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694-95, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978).

   In order to state a Section 1983 claim against a municipality, the Plaintiffs must allege that the constitutional violation was a result of municipal "policy or custom." See Monell, 436 U.S. at 694-95, 98 S. Ct. 2018, 2037. "Liability may be imposed . . . for wrongs the municipality itself commits." Eisenberg v. District Attorney of County of King, No. 93 cv 1647, 1996 U.S. Dist. LEXIS 22469, at *13 (E.D.N.Y. July 17, 1996); see also Walker v. City of New York, 974 F.2d 293, 296

10

(2d Cir. 1992) ("it is only when the municipality itself commits the misdeed, that is, when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983").

The Plaintiffs may prove a municipal custom, policy or practice in several ways. The Plaintiffs may show that a municipal official with final policymaking authority directly committed or commanded the alleged constitutional violation. Monell, 436 U.S. at 690, 98 S. Ct. at 2036; Jeffes v. Barnes, 208 F.3d 49, 61 (2d Cir. 2000). The Plaintiffs may also demonstrate that a policy maker indirectly caused the misconduct of a subordinate municipal employee by acquiescing in a longstanding practice or custom which may fairly be said to represent official policy. Monell, 436 U.S. at 694, 98 S. Ct. at 2038; Jeffes, 208 F.3d at 61. Finally, the Plaintiffs may show that a municipal policymaker failed to adequately train subordinates, if such failure amounts to "deliberate indifference" to the rights of the individuals who interact with the municipal employees. City of Canton v. Harris, 489 U.S. 378, 388, 109 S. Ct. 1197, 1204, 103 L. Ed. 2d 412 (1989); Jeffes, 208 F.3d at 61.

In the present case, the Plaintiffs do not claim that any alleged unconstitutional act resulted from a policy, custom or practice of the County, or that the County took any direct action with respect to the plea bargaining policy. The Plaintiffs only claim that the County is liable for the policy because Suozzi was aware of the existence of

the policy. In fact, the Plaintiffs make no specific allegations against the County. As a result, in order to determine whether the County is liable for a policy implemented by the District Attorney, this Court must determine whether the District Attorney acted as a municipal policymaker. Walker, 974 F.2d at 301; Eisenberg, 1996 U.S. Dist. LEXIS at *15-16.

"In this Circuit, a county may be liable pursuant to § 1983 for the actions of the district attorney in limited circumstances." Ryan v. City of Watertown, No. 98 cv 0616, 1998 U.S. Dist. LEXIS 15967, at *15 (N.D.N.Y. Oct. 7, 1998). In various cases, the Second Circuit has discussed the role of the District Attorney and the circumstances in which a municipality may be held liable for the District Attorney's actions.

In Baez v. Hennessy, 853 F.2d 73 (2d Cir. 1988), an assistant district attorney misread a grand jury's voting sheet and erroneously filed an indictment with the Court. The Second Circuit, addressing the Section 1983 claims against the county, based upon the actions of the assistant district attorney, provided a detailed analysis of the role of the district attorney in New York State. Id. The Court determined that the State, rather than the county, plays "a prominent regulatory role in the law enforcement activities of district attorneys." Id. at 76. The Court determined that "[w]hen prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the state not the county." Id. at 77. The Court

further found that the district attorney "should decide when and in what manner to prosecute a suspected offender." Id. In addition, the Court found that a district attorney should not be influenced by the county and that the "county has no right to establish a policy concerning how [the district attorney] should prosecute violations of State penal laws." Id. In Baez, the Court generally determined that because of the limits on the county's authority over the district attorney, the county could not be held responsible for the district attorney's conduct. Id.

However, three years later, in Gentile v. County of Suffolk, 926 F.2d 142, 153, n.5 (2d Cir. 1991), the Second Circuit limited the general holding of Baez, finding that a municipality could be held liable, not for the district attorney's decision regarding a prosecution, but rather "upon the county's long history of negligent disciplinary practices regarding law enforcement personnel, which gave rise to the individual defendants' conduct in promoting the malicious prosecution of plaintiffs."

One year later, the Second Circuit again clarified the issue of municipal liability. In Walker v. City of New York, 974 F.2d 293, 301 (2d Cir. 1992), the Court determined that, unlike the facts in Baez, in Walker, the plaintiff was challenging, not the district attorney's prosecutorial decisions, but rather, the district attorney's management of the district attorney's office, and specifically, the failure to supervise and train assistant district attorneys. The Court determined that in both Gentile and Walker, at issue was the district attorney's management of the office, either through

13

the failure to train employees or the sanctioning of police misconduct and covering up wrongdoing. Id. The Court held that "[w]here a district attorney acts as the manager of the district attorney's office, the district attorney acts as county policymaker." Id.

In Myers v. County of Orange, 157 F.3d 66, 77 (2d Cir. 1998), the Second Circuit reiterated its previous holdings, stating that a county could be held liable for the management of the district attorney's office and a long history of negligent disciplinary practices regarding law enforcement personnel. The Court held, however, that the county could not be held liable for decisions made by the district attorney regarding prosecutions. Id. In Myers, the Court specifically determined that the district attorney's policy directing the police to engage in investigative procedures that violated an individual's equal protection rights was equivalent to "a District Attorney's long practice of ignoring evidence of police misconduct and sanctioning and covering up wrongdoing . . . and a District Attorney's decision not to supervise or train Assistant District Attorneys on Brady and perjury issues." Id. (internal citations omitted). The Court, therefore, determined that the county was liable for the district attorney's policy directing the police to engage in improper investigative procedures. Id.

In the present case, in order to determine County liability, "[t]he question, therefore, is whether plaintiff[s'] claims arise out of the district attorney's management of the district attorney's office." Ryan, 1998 U.S. Dist. LEXIS at *15-

14

16. In <u>Ryan</u>, the plaintiff, as in the present case, alleged that the county was responsible for a policy of the district attorney's office. In <u>Ryan</u> the policy at issue provided that prosecutions of matters without basis would be pursued to obtain a plea bargain and avoid liability. <u>Id</u>. Unlike <u>Myers</u>, in which the district attorney's policy involved police investigations, the Court in <u>Ryan</u>, distinguishing <u>Myers</u>, noted that the policy at issue in <u>Ryan</u> was "inextricably related to the district attorney's decisions regarding whether to prosecute and what charges will be pursued." <u>Id</u>. The Court determined that at issue was the district attorney's decisions regarding the prosecution of cases. <u>Id</u>. The Court noted that the issues did not relate to management of the district attorney's office and therefore, could not be pursued against the county. <u>Id</u>. The Court further found that the county retained no supervisory authority over the district attorney's policies regarding the prosecution of crimes. <u>Id</u>. at *18-19; <u>McLaurin v. New Rochelle Police Officers</u>, 368 F. Supp.2d 289, 295 (S.D.N.Y. 2005) (the county has no right to establish policy regarding how a district attorney should prosecute violations of state criminal laws).

Similarly, in <u>Eisenberg</u>, 1996 U.S. Dist. LEXIS at *4, the Court determined that the municipality could not be held responsible for the district attorney's policy "of prosecuting sex crimes merely upon the allegations of complainants, regardless of the apparent merits." The Court determined that the plaintiff was actually challenging the district attorney's decision to prosecute him and that the municipality could not be

held liable for that action. Id. at *19. In Zachary v. County of Onondaga, No. 98 cv 1609, 1999 U.S. Dist. LEXIS 83, at *8-9 (N.D.N.Y. Jan. 7, 1999), the Court also determined that the County could not be held liable for a policy of the district attorney's office that involved "instituting baseless criminal actions to help the City avoid civil liability." The Court again found that the actions "relate to the district attorney's quasi-judicial actions (i.e. deciding whether to prosecute Zachary) and not on management of the district attorney's office." Id. at *9.

In the present case the Plaintiffs challenge an alleged policy of the District Attorney's Office regarding executing plea bargains. The negotiation of a plea bargain is a normal prosecutorial duty that is a valid function of a government attorney. Schloss v. Bouse, 876 F.2d 287, 291-92 (2d Cir. 1989); Zachary, 1999 U.S. Dist. LEXIS at *8-9. See also Taylor v. Kavanagh, 640 F.2d 450, 451-452 (2d Cir. 1981) (the Court found that the District Attorney's conduct in plea bargaining negotiations and sentencing is protected by the doctrine of absolute prosecutorial immunity. The Court noted that "absolute immunity from § 1983 liability exists for those prosecutorial activities intimately associated with the judicial phase of the criminal process"). The plea bargaining process is part of the District Attorney's decision regarding prosecution. The plea bargaining process is not related to the District Attorney's management of the office and has no relation to the training of Assistant District Attorneys or police investigative policies. Plea bargaining is

16

intertwined with prosecutorial decisions regarding prosecution and trial. As a result, the County cannot be held liable for a plea bargaining policy of the District Attorney.

Even assuming that the County could be held liable, the complaint fails to state a claim against the County. The Plaintiffs fail "to allege sufficient facts to suggest any administrative (as opposed to prosecutorial) policy that would expose the County to liability pursuant to § 1983." <u>Zachary</u>, 1999 U.S. Dist. LEXIS at *9. No facts set forth in the Complaint establish any cause of action against the County.

Accordingly, the Plaintiffs' claims against the County are dismissed.

**D.     As To The Claims Against Suozzi**

The Plaintiffs specifically state their claims against Suozzi in his official capacity. The Plaintiffs allege that Suozzi failed to eliminate the alleged unconstitutional plea bargaining policy. However, as previously discussed, the County is not responsible for policies of the District Attorney regarding prosecutions. As such, the Plaintiffs failed to state a claim against Suozzi. Moreover, "[t]he real party in interest in an official-capacity suit is the government entity." <u>Henrietta D. v. Bloomberg</u>, 331 F.3d 261, 288 (2d Cir. 2003).

Accordingly, all claims against Suozzi must be dismissed.

**E.     As To Younger Abstention**

The "Younger abstention doctrine creates a separate and independent barrier to federal court injunctions of pending state court proceedings." Erwin Chemerinsky,

Federal Jurisdiction § 11.2.1 (4th ed. 2003). In <u>Younger v. Harris</u>, 401 U.S. 37, 91 S.

Ct. 746, 27 L. Ed. 2d 669 (1971), the Supreme Court held that principles of federalism

and comity preclude a district court from interfering with pending state criminal

proceedings "except in very unusual situations, where necessary to prevent immediate

irreparable injury." <u>Samuels v. Mackell</u>, 401 U.S. 66, 69, 91 S. Ct. 764, 766, 27 L. Ed.

2d 688 (1971); <u>see also</u> <u>Younger</u>, 401 U.S. at 53-54, 91 S. Ct. at 755; <u>Pathways, Inc. v.

Dunne</u>, 329 F.3d 108, 113-14 (2d Cir. 2003) (citation omitted).

This rule has also been made applicable to suits seeking declaratory relief. <u>See</u>

<u>Samuels</u>, 401 U.S. at 73-74, 91 S. Ct. at 768 (holding that Younger also precludes the

issuance of a declaratory judgment because "ordinarily a declaratory judgment will

result in precisely the same interference with and disruption of state proceedings that

the longstanding policy limiting injunctions was designed to avoid"); <u>Papeskov v.

Brown</u>, No. 97 cv 5351, 1998 U.S. Dist. LEXIS 8355, at *16 (S.D.N.Y. June 8, 1998)

(pursuant to the Younger doctrine, the Court denied the plaintiff's requests for

injunctive relief prohibiting prosecution of his pending criminal case).

Generally, there is no irreparable injury if the state proceedings provide an

appropriate venue for the plaintiff to protect his or her federally protected rights.

"[T]he cost, anxiety, and inconvenience of having to defend against a single criminal

prosecution, could not by themselves be considered 'irreparable' in the special legal

sense of that term." <u>Younger</u>, 401 U.S. at 46, 91 S. Ct. at 751 (citations omitted).

In determining whether abstention is appropriate the Court must consider whether: (1) there is an ongoing state proceeding; (2) an important state interest is implicated; and (3) the plaintiff has an open avenue for review of his constitutional claims in the state courts. Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2004).

In this case, the Plaintiffs have brought suit on behalf of four separate subclasses of individuals. However, the Plaintiffs can be simply categorized as those with criminal charges pending against them who are awaiting disposition of their cases and those against whom a final judgment has already been entered. As to the Plaintiffs who have charges pending against them, the first element of Younger is satisfied. With regard to the second element, the Court finds that an important New York interest is implicated. Generally, the second element is satisfied any time a party seeks to enjoin a pending criminal proceeding. See Davis v. Lansing, 851 F.2d 72, 76 (2d Cir. 1988) ("There is no question that [an] ongoing prosecution implicates important state interests: Younger itself settled the importance of the state's interest in criminal proceedings."); Toback v. City of Long Beach, 948 F. Supp. 167, 170 (E.D.N.Y. 1996) ("[I]t is beyond cavil that the City has an important interest at stake simply by virtue of the ongoing criminal prosecution.") (citing Hansel v. Town Court of Springfield, 56 F.3d 391, 393 (2d Cir. 1995)).

19

Regarding the third element, the Plaintiffs have an appropriate avenue in state court for review of their constitutional claims. As there is no constitutional right to a plea bargain, the Plaintiffs do not have to take part in plea agreements and can raise their arguments in state court. Weatherford v. Bursey, 429 U.S. 545, 561, 97 S. Ct. 837, 51 L. Ed. 2d 30 (1977) ("there is no constitutional right to plea bargain"); Wheeler v. Phillips, No. No 05-CV-4399, 2006 U.S. Dist. LEXIS 61397, at *29 (E.D.N.Y. Aug. 15, 2006). Moreover, the Plaintiffs can also raise their arguments on appeal once a state court judgment is entered.

Finally, none of the exceptions to the Younger doctrine are applicable here. One such exception is based on bad faith state prosecutions. See Younger, 401 U.S. at 54, 91 S. Ct. at 755. The exception is applicable "only in cases of proven harassment prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction" or in the presence of other extraordinary reasons. Perez v. Ledesma, 401 U.S. 82, 85, 91 S. Ct. 674, 677, 27 L. Ed. 2d 701 (1971). No such bad faith is evident here.

Accordingly, the Court will abstain from exercising jurisdiction over the claims of those Plaintiffs with state criminal charges pending against them under Younger and its progeny. Therefore, all claims by those Plaintiffs with pending criminal prosecutions must be dismissed against all Defendants.

## F.    Rooker Feldman

When parties against whom state court judgments have been entered, seek to challenge the judgments, this Court lacks subject matter jurisdiction to decide the claims under the Rooker-Feldman doctrine. See Rooker v. Fidelity Trust Co., 263 U.S. 413, 68 L Ed. 362, 44 S. Ct. 149 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 75 L. Ed. 2d 206, 103 S. Ct. 1303 (1983). Under this doctrine, "federal district courts lack jurisdiction to review state court decisions whether final or interlocutory in nature". Gentner v. Shulman, 55 F.3d 87, 89 (2d Cir. 1995). "Such jurisdiction is lacking because within the federal system, only the Supreme Court may review a state court judgment." Hachamovitch v. DeBuono, 159 F.3d 687, 693 (2d Cir. 1998).

"The Rooker -Feldman doctrine . . . is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 291-292, 125 S. Ct. 1517 (2005). A plaintiff may not allege federal-question jurisdiction, requesting that a district court overturn a state-court judgment. Id.

In fact, following the Supreme Court's decision in Exxon Mobile, the Second Circuit articulated a four part test for the application of the Rooker-Feldman doctrine.

According to the Second Circuit, in order to apply the Rooker-Feldman doctrine: (1) the federal plaintiff must have lost in state court; (2) the federal plaintiff must complain of injury from a state-court judgment; (3) the federal plaintiff must seek federal-court review and rejection of the state-court judgment; and (4) the federal suit must have been initiated after the challenged state judgment. Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 85-87 (2d Cir. 2005).

The Plaintiffs in the current case, against whom judgments have been entered, have lost in state court, seek this Court's review and initiated this lawsuit after the state court entered judgments. Although upon first glance, it appears that the present matter is exactly the type of case contemplated by the Supreme Court in Exxon Mobil and the Second Circuit in Hoblock, it is unclear from the Second Circuit's reasoning in Hoblock whether the Plaintiffs are actually complaining of an injury from a state court judgment. In Hoblock, the Second Circuit determined that "a federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it. Where a state-court judgment causes the challenged third-party action, any challenge to that third-party action is necessarily the kind of challenge to the state judgment that only the Supreme Court can hear." Id. at 88.

Although the Plaintiffs request that this Court review the state court's determinations and provide relief from the judgments by declaring that each Plaintiff entered an ineffective plea agreement and provide the Plaintiffs with the opportunity to re-negotiate their plea agreements, the Plaintiffs do not claim that the state court judgments caused the District Attorney's action, as seemingly required by <u>Hoblock</u>. Rather, the Plaintiffs claim an injury as a result of the policy that was allegedly approved by the state courts. As a result, it is unclear whether the Rooker-Feldman doctrine bars the Plaintiffs' claims. As it is unclear whether the Rooker-Feldman doctrine bars the Plaintiffs' claims, this Court will address the merits of the Plaintiffs' federal constitutional claims.

**G.      As To The Plaintiffs' Equal Protection Claims**

The Fourteenth Amendment of the United States Constitution guarantees that no state shall "deny to any person within its jurisdiction the equal protection of the laws." This is "essentially a direction that all persons similarly situated should be treated alike." <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985); <u>Caidor v. M&T Bank</u>, No. 05-CV-297, 2006 U.S. Dist. LEXIS 22980, at *13-14 (N.D.N.Y. Mar. 27, 2006) (internal citations omitted) ("The equal protection clause directs state actors to treat similarly situated people alike. . . . To prove an equal protection violation, claimants must prove purposeful

discrimination . . . directed at an identifiable or suspect class"); see also Harlen
Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001).

Discriminatory treatment by government officials is sufficient to trigger
assessment under the Equal Protection Clause. See Lewis v. Thompson, 252 F.3d
567, 590 (2d Cir. 2001). If government action interferes with a "fundamental right" or
discriminates against a "suspect class," it must be reviewed using the strict scrutiny
analysis. Absent these circumstances, government action will ordinarily survive an
equal protection challenge so long as the action is rationally related to a legitimate
governmental purpose. Plyler v. Doe, 457 U.S. 202, 216-17, 102 S. Ct. 2382, 72 L.
Ed. 2d 786 (1981). When government action discriminates against an individual for
reasons other than an association with a class, the plaintiff is commonly referred to as
a "class of one," rather than a "suspect class."

A plaintiff may maintain an equal protection claim as a "class of one" so long
as he establishes that he was treated differently than similarly situated persons and that
the unequal treatment he received was motivated by personal animus. Harlen Assocs.,
273 at 500; Cobb v. Pozzi, 363 F.3d 89, 110 (2d Cir. 2004) (stating elements for
"selective prosecution theory" of equal protection). The Equal Protection Clause bars
the government from selective adverse treatment of individuals compared with other
similarly situated individuals if "such selective treatment was based on impermissible
considerations such as race, religion, intent to inhibit or punish the exercise of

constitutional rights, or malicious or bad faith intent to injure a person." Le Clair v. Saunders, 627 F.2d 606, 609-10 (2d Cir. 1980).

In this case, the Plaintiffs fail to allege membership in any protected class. In fact, the Plaintiffs do not mention race, religion, national origin, or any other protected category throughout their complaint. Notably, the Plaintiffs also fail to allege that they were treated differently than other similarly situated individuals. In fact, in their complaint, the Plaintiffs seek class certification, while alleging that the District Attorney uniformly applied the plea bargaining policy at issue throughout Nassau County. Accordingly, on the merits, the Plaintiffs' Section 1983 Equal Protection claims are dismissed.

Further, although the Plaintiffs complain of a plea bargaining policy and do not seem to allege that they have been selectively prosecuted by the District Attorney, even liberally construing their complaint, any such claim will fail. Although equal protection protects parties from selective prosecution by the District Attorney, it only "prevents a prosecution from being based on an unjustifiable standard such as race, religion, or other arbitrary classification." United States v. White, No. 02 cr 1111, 2003 U.S. Dist. LEXIS 2896, at *5-6 (S.D.N.Y. Feb 28, 2003). "The requirements for a selective prosecution claim draw on ordinary equal protection standards," and as a result, the plaintiffs must demonstrate that the district attorney's policy "had a discriminatory effect and that it was motivated by a discriminatory purpose." Id.

25

Clearly, as the Plaintiffs failed to set forth any allegation of membership in a protected class or treatment that differs from other similarly situated individuals, all equal protection claims must be dismissed.

## H. As To The Plaintiffs' Due Process Claims

### 1. Procedural Due Process

The Supreme Court has directed that procedural due process claims be examined in two steps. A plaintiff must identify a liberty or property interest and demonstrate that the state has deprived it of that interest without due process of law. Ciambriello v. County of Nassau, 292 F.3d 307, 313 (2d Cir. 2002).

In order to establish a procedural due process violation, a plaintiff must prove that he or she was deprived of an opportunity . . . granted at a meaningful time and in a meaningful manner for [a] hearing appropriate to the nature of the case." Brady v. Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988) (internal citations omitted). In the present case, the Plaintiffs claim that the District Attorney utilized a plea bargaining policy which mandated the sentence that would be imposed. Although the Plaintiffs' complaint contains conclusory allegations that their due process rights were violated, even liberally construing the pro se allegations, the Plaintiffs fail to provide "simple, concise, and direct" allegations as to why there was a violation of procedural due process. See Fed. R. Civ. P. 8(a)(2).

In fact the Plaintiffs do not assert that pre-deprivation and post-deprivation remedies were not available to them. Specifically, the Plaintiffs do not claim that they were unable to address this issue in state court prior to entering plea agreements with the District Attorneys' office, or, following their plea agreements, on appeal. The Plaintiffs were not forced to enter into plea agreements and, in fact, some of the Plaintiffs are pre-trial detainees who have not yet pled guilty to any offense. Moreover, prior to entering any such agreements, the Plaintiffs could communicate their concerns to their attorneys and to the judges presiding over their cases. Moreover, following their pleas, the Plaintiffs could also address their concerns by a motion to vacate their plea or on appeal. See Rackley v. City of New York, 186 F. Supp. 2d 466 (S.D.N.Y. 2002); see also Liotta v. Rent Guidelines Board, 547 F. Supp. 800, 802 (S.D.N.Y. 1982) ("In considering whether [the] defendants have failed to afford [the] plaintiffs due process ... the Court evaluates the entire procedure, including the adequacy and availability of remedies under state law).

In addition, the Plaintiffs have not shown that they have been deprived of any right. "[T]here is no constitutional right to plea bargain." Weatherford, 429 U.S. at 561. Further, the Plaintiffs do not allege that they were deprived of the right to a plea bargain. In addition, the Plaintiffs do not claim that they were in any way deprived of proper sentences. In fact, the Plaintiffs do not allege that the sentences imposed pursuant to their pleas were in any way improper or excessive. Moreover, as to the

27

Plaintiffs who have not yet plead guilty or been sentenced, they do not allege that the sentences sought by the District Attorney are improper or excessive.

Accordingly, accepting all of the Plaintiffs' claims as true, the Plaintiffs' procedural due process claims must be dismissed.

### 2. Substantive Due Process

"Substantive due process protects against government action that is arbitrary, conscience shocking, or oppressive in a constitutional sense, but not against a government action that is 'incorrect or ill advised.'" T.S. Haulers, Inc. v. Town of Riverhead, 190 F. Supp. 2d 455, 460 (E.D.N.Y. 2002) (quoting Kaluczky v. City of White Plains, 57 F.3d 202, 211 (2d Cir. 1995) (internal citations omitted)). Thus to prevail on this claim, the plaintiff must demonstrate that the Defendants "so grossly abused their authority that they deprived him of a constitutionally protected property interest." Rackley, 186 F. Supp. 2d at 479. Such abuse occurs only where the government action challenged is so "outrageous and arbitrary that it shocks the conscious." Id. In addition, in order to prevail, the plaintiff must "produce evidence showing that the scheme challenged served no legitimate state interest." Id. at 480.

The Plaintiffs have failed to demonstrate that the Defendants have taken actions that either "shock the conscience" or were arbitrary or outrageous. Additionally, the Plaintiffs fail to allege that the District Attorney's plea bargaining policy serves no legitimate state interest. Id. at 480 (dismissing the plaintiff's

28

substantive due process claim because he failed to produce evidence showing that the scheme challenged served no legitimate state interest). Accordingly, the Plaintiffs' substantive due process claims must be dismissed.

## I.    As To The Plaintiffs' Separation of Powers Claims

The Plaintiffs vaguely claim that the actions of the District Attorney's Office violated the Separation of Powers doctrine. Following a liberal examination of the pro se complaint, it appears that the Plaintiffs argue that the District Attorney's selection of sentences infringes on the power of the judiciary to oversee sentencing. However, despite the Plaintiffs' request for relief pursuant to this doctrine, the "primary obstacle to judicial intervention in matters of prosecutorial discretion is the separation of powers doctrine." Ostrer v. Aronwald, 434 F. Supp. 379, 394 (S.D.N.Y. 1977).

"New York law reposes in its prosecutors a discretion to decide whether or not to prosecute in a given case, which is not subject to review." Inmates of Attica Correctional Facility, 477 F.2d at 382. "Few subjects are less adopted to judicial reviews than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or what precise charge shall be made, or whether to dismiss a proceeding once brought." Wachsman v. Morgethau, No. 77 Civ. 6297-CSH, 1978 U.S. Dist. LEXIS 18717, at *4 (S.D.N.Y. Mar. 29, 1978) ("Consequently, insofar as plaintiff seeks to sanction the district attorney for nonfeasance, he must seek his satisfaction in the political, not judicial, arena. For this

reason the complaint is dismissed.") (internal citations omitted). "The prosecutor's decision to seek an indictment is subject to judicial scrutiny only on a substantiated claim of "racial or similar discrimination." Ostrer, 434 F. Supp. at 394 (citing United States v. Strutton, 494 F.2d 686, 688 (2d Cir. 1974)). In fact "the problems inherent in the task of supervising prosecutorial decisions do not lend themselves to resolution by the judiciary. The reviewing courts would be placed in the undesirable and injudicious posture of becoming 'superprosecutors.'" Inmates of Attica Correctional Facility, 477 F.2d at 380.

As the Plaintiffs allege in their complaint, New York Courts are obligated to exercise discretion at sentencing, People v. Farrar, 52 N.Y.2d 302, 308 419 N.E.2d 864, 437 N.Y.S.2d 961 (1981). Although the Plaintiffs allege that the Nassau County Courts no longer select sentences when the District Attorney enters into a plea bargain, the Plaintiffs do not claim that the Courts fail to review and approve sentences selected by the District Attorney. In fact, despite the District Attorney's selection of sentence, the Plaintiffs do not claim that the Courts fail to exercise any discretion at sentencing. Further, the Plaintiffs do not claim that Nassau County judges are obligated to accept the District Attorney's plea bargains. In fact, significantly, insofar as the claims in this case are concerned, judges have the discretion to "refuse to accept a guilty plea offered by the prosecutor to the defendant." Wheeler, 2006 U.S. Dist. LEXIS at *30. As previously noted, there is no

constitutional right to a plea bargain and "the prosecutor need not offer a plea bargain to defendants at all." Id. at *29.

Moreover, although the Plaintiffs claim that the District Attorney's Office now selects sentences during plea bargaining, the Plaintiffs make absolutely no allegation that the sentences selected are in any way improper, or excessive for the relevant offenses, or that the defendants are obligated to accept the plea. In addition, most, if not all, plea bargains involve discussion of the appropriate sentence in exchange for the defendant's guilty plea. "Indeed, it would be to ignore reality to deny that an integral part of the plea bargaining process is the negotiated sentence. In considering whether to permit a defendant to plead to a lesser offense, the prosecutor legitimately may consider and negotiate a penalty that he or she deems necessary to serve the interests of the People." Farrar, 52 N.Y.2d at 306-307. In fact, "[a] negotiated sentence permits a compromise that may well satisfy the law enforcement demands of the office and the ends of justice. Thus, the 'sentence bargain' is a legitimate part of the plea bargaining process." Id.

Although the Plaintiffs claim that the District Attorney's policy is improper, this policy, as explained by the Plaintiffs in their complaint, is not substantially different from the 'sentence bargain' commonly used in which the prosecutor suggests a sentence in exchange for a guilty plea. As the New York Court of Appeals noted, the prosecutor may, as part of a legitimate plea agreement, negotiate and obtain a

31

specific sentence that the prosecutor deems necessary to the interests of the State. Id. The Courts have recognized the District Attorney's legitimate right to condition the State's consent to a plea agreement on the sentence of its choice, by recognizing that the District Attorney maintains the "right to withdraw consent to the plea in the event that the sentence to be imposed is less than originally negotiated by the parties." Id.

Accordingly, the Plaintiffs' "separation of powers" claim is dismissed. As previously discussed, if the Plaintiffs believe that the state courts have not properly exercised judicial discretion at sentencing, the Plaintiffs have various available state remedies, including the motion to withdraw their plea and an appeal.

### J.     The Plaintiffs' State Law Claims

Although the Plaintiffs have alleged violations of the New York State constitution and various New York laws, jurisdiction over these claims is asserted solely on the basis of the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367. The Court has determined that all the federal law claims should be dismissed. As a result, there is no basis upon which to retain supplemental jurisdiction over the state law claim. Id. (citing United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S. Ct. 1130, 1139, 16 L. Ed. 2d 218 (1966)).

Accordingly, the Plaintiffs' state law claims are dismissed.

### K. The Plaintiffs' Motion for Class Certification

As this Court has dismissed the Plaintiffs' complaint in its entirety, the Plaintiffs' motion for class certification is denied as moot.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED** that the Defendants' motion to dismiss the complaint is **GRANTED**; and it is further

**ORDERED** that the claims against all Defendants are dismissed with prejudice; and it is further

**ORDERED** that the Plaintiffs' motion for class certification is denied as moot; and it is further

**ORDERED** that the Clerk's Office serve a copy of this Order on each Plaintiff, by certified mail return receipt requested, at the addresses listed on this Court's docket sheet, and an additional copy to Daniel Miller, DIN 06A5353 at Gowanda Correctional Facility, PO Box 445, Fishkill, New York 12524; and it is further

**ORDERED** that the Clerk of Court is directed to close this case.

**SO ORDERED.**

Dated: Central Islip New York
      December 12, 2006

                                               */s/ Arthur D. Spatt*
                                                ARTHUR D. SPATT
                                    United States District Judge